IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| 1.  NATHANIEL ADKINS | |
| 2.  CHRISTOPHER AEH | Case No. 23-2197 C |
| 3.  JEREMY ANDERSON | **COMPLAINT** |
| 4.  ALVIN BAILEY | |
| 5.  JOSEPH BAINER | |
| 6.  DEREK BAZELL | |
| 7.  AARON BECKER | |
| 8.  JERRY BISHOP | |
| 9.  AUSTIN BLANKENSHIP | |
| 10. BRANDON BLANKENSHIP | |
| 11. LUCAS BONNER | |
| 12. ROBERT BOWLES | |
| 13. CODY BOWLING | |
| 14. APRIL BRADFORD-RIFFE | |
| 15. TIMOTHY BRANDT | |
| 16. BRENT BULLION | |
| 17. JOSHUA BURGESS | |
| 18. ASHLEY CALVER | |
| 19. CHRISTOPHER CAMPBELL | |
| 20. JOHN CARROLL | |
| 21. JASON CARTER | |
| 22. SETH CATHELL | |

23. DARRELL CHAPMAN

24. SETH CLARK

25. HYATT CLARKE

26. BLAKE COPLEY

27. JAMES CORDLE

28. RICHARD COX

29. AUSTIN JOSEPH CYRUS

30. CHRISTOPHER DAMRON

31. ROBERT DAVIS II

32. JARED DEVER

33. RONNIE DIXON JR

34. GRETA DOUTHAT

35. RYAN DOUTHAT

36. CALEB ESQUE

37. JORDAN EVANS

38. JONATHAN FERGUSON

39. THOMAS FLANNERY

40. SHAD FORD

41. JOHN FRANKLIN JR

42. KEITH FRAZER

43. ROBERT FRYE

44. FRANK GALLIAN

45. JASON GUY

46. DUSTIN HALL

47. BRAD HAMILTON

48. SHAWN HAMILTON

49. TRAVIS HANSHAW

50. CLAYTON HEDRICK

51. ZACHARIAH HERREN

52. BRIAN HOLMES

53. MARK HOPPER

54. CHLOE HOSTETLER

55. MATTHEW HUTCHINSON

56. DANIEL INGELS

57. NICHOLAS INSKEEP

58. TRAVIS JACKSON

59. BRADLEY JOHNSON

60. KERRY JOHNSON

61. BENJAMIN JONES

62. ASHLAND JOSEPH

63. BRANDON KEELING

64. WADE KIDD

65. BETH KOSTER

66. LINSEY KOUNS

67. MICHAEL LANGE

68. JASON LEWIS

69. TIMOTHY LITERAL

70. RICHARD LOPEZ III

71. SABRINA MANGUS

72. JEREMY MANNON

73. RICKY MAYES

74. PAUL MCCONNELL II

75. GARRICK MCCOY

76. TRAVIS MCCOY

77. JOSHUA MERCERS

78. JONATHAN MERRYWEATHER

79. ROBERT MILLER

80. VINSON MILLER

81. MICHAEL MITCHELL

82. MICHAEL MONDINI

83. COREY NEWMAN

84. MICHAEL NEWSOME

85. JEREMY NOBLE

86. AUSTIN PATTON

87. JOHN PEMBERTON

88. BRADLEY PENDLETON

89. LENVEL PERRY

90. JONATHAN PRICE

91. SEAN PRIMM

92. DONALD RAMSEY

93. BRADY RATCLIFF

94. SHAWN REED

95. CODY REINHOLD

96. JAMES ROBINSON

97. MARK ROBINSON

98. BRIAN ROSS

99. KELLY SALLIE

100. WILLIAM SCAGGS

101. JAMIE SEAGRAVES

102. TYLER SEXTON

103. SUSAN SKIDMORE

104. BRIAN SMITH

105. CHARLES SMITH

106. DAVID SMITH

107. MATTHEW SMITH

108. RUSTY STANLEY

109. DERRICK STEVENS

110. AARON THOMPSON

111. CAMERON THOMPSON

112. JOHN THOMPSON

113. JEREMY THORNSBERRY

114. JAMES VANCE

115. ZACHARY VANNATTER

116. JEFFREY VITIELLO

117. NICHOLAS WAUGH

118. DAVID WHEELER

119. MARK WHITE

120. MICHAEL WHITE

121. BEVERLY WHITLEY

122. ADAM WOODS

123. JEREMY WOODS

124. JOSHUA WOOFTER

125. AARON WYNN

126. RICKY WYNN

      Plaintiffs,

      v.

THE UNITED STATES,

      Defendant.

## **COMPLAINT**

1.    The plaintiffs are current and former employees of the defendant United States int the U.S. Department of Justice, Bureau of Prisons, at the Federal Correctional Institution ("FCI") Ashland (hereinafter, "FCI Ashland" or "Institution") in Ashland, Kentucky. Plaintiffs bring this action against the defendant on behalf of themselves and other employees similarly situated for back pay, and other relief, pursuant to 29 U.S.C. § 216(b), 29 U.S.C. § 1331, 28 U.S.C. §

6

1346(a)(2), 28 U.S.C. § 1491, 5 U.S.C. § 5596, and the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, to remedy the willful and unlawful violations of federal law complained of herein.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 1331, 28 U.S.C. § 1491, and 29 U.S.C. § 216(b).

3. Venue is proper pursuant to 28 U.S.C. § 1402.

## PARTIES

4. Each of the plaintiffs in this action is, or has been, an "employee" within the meaning of Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 2105, 5102, and 5041, and within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

5. Each of the plaintiffs is a current or former correctional worker employed by the United States Department of Justice, Bureau of Prisons, at FCI Ashland in Ashland, Kentucky. They have given their written consent to be party-plaintiffs in this action pursuant to 29 U.S.C. § 216(b). The consent to sue forms are attached as **Exhibit A**. These written consent forms set forth each plaintiff's name and home address.

6. Defendant United States is, and at all material times has been, an employer under Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 5102 and 5541. Defendant United States also is, and at all material times has been, a "public agency" and "employer" within the meaning of the FLSA, 29 U.S.C. § 203(x) and § 203(d). Defendant employs, or has employed, the plaintiffs and other similarly situated employees and has its principal place of business in Washington, D.C.

## FACTS

7. At all times material herein, plaintiffs have been entitled to the rights, protections,

and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq*.

8.  At all times material herein, plaintiffs have worked in excess of the hourly levels specified in the FLSA, 29 U.S.C. § 207, and, as a result, at all times material herein have been entitled to overtime compensation at a rate of not less than one and one-half times their regular rate of pay for all the hours they work in excess or 8 hours in a work day and/or in excess of 40 hours in a workweek.

9.  FCI Ashland is a low security correctional facility that houses over 1,100 male inmates who have been convicted of federal crimes, including violent offenders, drug dealers, rapists, murderers, and gang members, and who are serving sentences of varying lengths up to and including life sentences.

10.  The Institution is staffed 24 hours per day, 365 days per year by correctional officers, including plaintiffs. The correctional officers' principal activity is maintaining the safety and security of the Institution, inmates, and staff. They are charged with performing this principal activity every moment that they are within the Institution from the moment they begin clearing the mandatory security screening prior to their scheduled shifts until they exit the secure confines of the Institution after their scheduled shifts end. The plaintiffs perform their principal activity by, among other things, searching for an eliminating contraband, maintaining constant vigilance to ensure that nothing out of the ordinary is occurring, and immediately addressing any issues including inmate questions that they see no matter the location and time of day that it occurs, including before their paid shifts begin and after their paid shifts end.

11.  Plaintiffs are assigned to posts within the Institution. Most of the posts are staffed for 16 or 24 hours per day, although some are staffed for only 8 hours per day.

12.  When a post is staffed for 24 hours per day, defendant assigns a correctional officer

to the post for a scheduled paid shift of 8 hours. For a 24-hour post, there are three 8-hour paid shifts daily, often referred to as Morning Watch, Day Watch and Evening Watch.

13. There is no scheduled overlap for the three 8-hour shifts on the 24-hour posts. The Day Watch shift is from 8:00 a.m. to 4:00 p.m.; Evening Watch is from 4:00 p.m. to midnight; and Morning Watch is from midnight to 8:00 a.m. The plaintiffs are required to be on their assigned posts, in uniform and with all assigned equipment and pertinent post information, by the scheduled start of their paid shift. Failure to meet this requirement subjects the plaintiffs to discipline. The plaintiffs must remain on their posts until they are properly relieved. Failure to meet this requirement subjects the plaintiffs to discipline.

14. When assigned to the 24-hour posts, plaintiffs perform more than 8 hours and 10 minutes of work each day because the plaintiffs perform work both before their scheduled paid shift start time and/or after the end of their scheduled paid shifts.

15. Defendant does not compensate plaintiffs for the time that plaintiffs spend performing daily, expected work outside of their regularly scheduled 8-hour shifts. At all times material herein, defendant has suffered or permitted plaintiffs to work at least 15-30 minutes each shift, and sometimes more, before and/or after their scheduled shift times without compensating plaintiffs for this work time.

16. 24-hour posts worked by plaintiffs at FCI Ashland include but are not limited to: Compound 1; Compound 2, Control 1; Housing Units C, D, E, F, G, H, J, K, R, and Special Housing Unit 1; Special Housing Unit 2.

17. Defendant has deprived the plaintiffs and other similarly situated employees of overtime compensation by failing to compensate them for the time that defendant has suffered or permitted them to spend engaged in pre-shift activities, including but not limited to the work

activities described in paragraphs 18-36 below, which must be performed on Institution premises.

18.     On a daily basis, plaintiffs assigned to a post at the Institution begin their unpaid pre-shift work when they start the process of clearing the staff screening site in the front lobby. At this location, plaintiffs perform their principal activity of maintaining safety and security by assisting in assuring no contraband enters the Institution. The compensable (but unpaid) workday continues when plaintiffs collect and don their duty belts, and other required equipment after clearing the staff screening site, including required metal chains and chits, which are essential to securely hold keys and access mandatory equipment. Retrieving and donning the duty belt and metal chains and chits must be performed on defendant's premises after clearing the screening site because the plaintiffs cannot wear their duty belts, and metal chains as they walk through the upright metal detector without sounding the alarm. Collecting and donning equipment on the employer's premises is compensable work but unpaid at the Institution.

19.     Regardless of the post to which they are assigned to at the Institution, after plaintiffs clear the staff screening site and collect and don their duty belt and other mandatory equipment, plaintiffs continue to perform pre-shift work activities as part of the continuous workday for which they are not paid. In addition, for all posts, plaintiffs perform their principal activity of maintaining safety and security on the way to their assigned posts inside the secure confines of the Institution because they, at all times, are in uniform and identifiable to the inmates and staff as correctional officers, and remain vigilant, alert, and ready to (and do) respond to emergencies. They perform these pre-shift tasks without pay on a daily basis.

20.     After donning their duty belts, and collecting and donning other required equipment, plaintiffs will be visually identified by the appropriate Control Center officer who will allow them entrance into the Control Center sally port where they are required to flip their

accountability chit signifying that they are on duty and inside the secured confines of the Institution. After clearing the sally port, the plaintiffs are locked inside the Institution with the inmates with no control over the sally port and slider doors.

21. Plaintiffs continue to perform unpaid security work after clearing the sally port and while walking to their posts inside the secure confines of the Institution. While walking to their posts, plaintiffs continue to perform their principal activity by supervising and monitoring inmates, observing and correcting inmate behavior, responding to inmate questions, checking for security breaches in the Institution, searching for contraband, running to locations where body alarms sound, and responding to other emergencies as they arise. At all times plaintiffs are within the secure confines of the Institution, plaintiffs are subject to the rules and regulations of the Institution and the U.S. Bureau of Prisons and are in uniform and identifiable to all individuals as correctional officers.

22. For all posts at issue, Plaintiffs perform their principal activities of maintaining safety and security of the Institution, inmates and staff while walking to their assigned posts inside the secure confines of the Institution because, among other things, they, at all times, are in uniform, identifiable to the inmates and staff as correctional officers, and they perform patrol and security work as they walk to their posts, remain vigilant, alert, and ready to (and do) respond to emergencies.

23. Once the plaintiffs arrive at their posts inside the Institution, they continue to perform unpaid work as they inspect, account for, and exchange equipment—including but not limited to radios, oleoresin capsicum ("OC") spray and keys—with the outgoing correctional officer assigned to that post. The plaintiffs also perform a vital (but unpaid) information exchange with the outgoing correctional officer about any significant security events that occurred the

previous shift so that the oncoming correctional officer has all the important information they need to maintain security of the inmates, staff, and post during their shift.

24. In performing this information and equipment exchange, the oncoming correctional officer and the outgoing correctional officer, whose paid scheduled shifts do not overlap, can be outnumbered by inmates by ratios of 100 (or higher) to 2. While performing the information and equipment exchange, Plaintiffs are physically at their assigned posts locked inside the Institution and/or locked inside a housing unit/special housing unit/the compound, etc., with dangerous inmates. As they exchange equipment and vital, potentially, life-saving information, plaintiffs are performing their principal activities of maintaining safety and security of the Institution by supervising and monitoring inmates *on post.* While doing so, they also continue to perform their principal activity of maintaining safety and security of the Institution by ensuring accountability for keys and correctional equipment so that such items do not fall into the hands of inmates, as well as by ensuring that oncoming officers have all information necessary to maintain the safety and security of the inmates, staff and post during their shift.

25. This on-post information and equipment exchange is neither a preparatory nor concluding activity. Accordingly, it cannot be *de minimis* as a matter of law. It is part of the plaintiffs' workday and should be part of the scheduled compensable shift, but it is not. Instead, the Government expects plaintiffs to perform this work on-post for free, shift after shift.

26. At minimum, performing this vital information and equipment exchange on the assigned post is integral and indispensable to plaintiffs' principal activity of maintaining safety and security of staff, inmates, and the Institution because the exchange is intrinsic to that principal activity, and one with which they cannot dispense if they are to safely perform their jobs as correctional officers in the dangerous prison environment.

27. While two officers engage in this information and equipment exchange with each other on each post (i.e., the oncoming and outgoing officer), only one officer is paid for this work time because there is no scheduled paid overlap to the shifts even though there is, in fact, an overlap to the shifts.

28. Defendant is aware that there is a *de facto* overlap of Plaintiffs' shifts.

29. Defendant has also deprived plaintiffs and other similarly situated employees of overtime compensation by failing to compensate them for the time that defendant has suffered or permitted them to engage in post-shift activities, all of which must be performed on Institution premises. These activities include, but are not limited to, exchanging information and equipment on the assigned post with oncoming staff, remaining vigilant, alert, and ready to respond to emergencies while within the secured confines of the Institution, supervising and monitoring inmates, observing and correcting inmate behavior, looking for contraband, responding to body alarms and other emergencies.. These activities are all part of the continuous workday and are compensable, but they are unpaid at the Institution.

30. Plaintiffs are required to, and do, respond to emergencies, including violent fights between inmates, within the Institution on unpaid time when such emergencies occur while they are walking to their posts prior to their shifts or while they are walking from their posts back to the Control Center after their shifts. Failure to respond to an emergency can result in discipline up to and including termination.

31. At minimum, these on-post equipment and information exchanges and the patrol and security activities performed by plaintiffs as they walk to and from their posts outside their scheduled shift hours are activities that are integral and indispensable to plaintiffs' principal activity of maintaining safety and security of staff, inmates, and the Institution because they are

intrinsic to that principal activity, and ones with which they cannot dispense if they are to safely perform their job duties as correctional officers in the dangerous prison environment.

32. After clearing the screening site and donning equipment that has been screened at that site, Plaintiffs spend at least 15-30 minutes above and beyond their scheduled 8-hour shifts each shift locked inside the Institution: (1) walking to their posts prior to their paid shifts while performing the duties described in paragraphs 21-22 and 29-30, *supra;* (2) engaging in the on-post, unpaid information and equipment exchange described in paragraphs 23-27; and (3) walking from their posts to exit the secured perimeter after their paid shifts while performing the duties described in paragraph 29-30.

33. While the 24-hour correctional officer posts are primarily staffed with correctional officers, due to staff shortages, non-custody correctional workers are often "augmented" to cover correctional officer posts. Non-custody positions include but are not limited to workers assigned to food services, unit counselors, and correctional services staff.

34. When non-custody workers are augmented and assigned to a correctional officer post, the non-custody workers perform the same unpaid work duties as a correctional officer and arrives and departs at the same time that a correctional officer working the same shift on the same post would. Thus, plaintiffs who are non-custody workers have been suffered or permitted to perform the same unpaid work daily, as described above, to maintain the safety and security of the Institution when assigned to the posts at issue in this case. However, similar to the custody worker plaintiffs, defendant only compensates non-custody worker plaintiffs for their scheduled hours of work and does not compensate them for their pre-shift or post-shift work when they work on an at-issue correctional officer post.

## COUNT I

### FAILURE TO PROPERLY COMPENSATE EMPLOYEES FOR THE ENTIRE CONTINUOUS WORKDAY

35.     Plaintiffs hereby incorporate by reference Paragraphs 1 through 34 in their entirety.

36.     Section 7(a) of the FLSA (29 U.S.C. § 207(a)) provides that an employer, including the United States, shall compensate its employees at a rate not less than one and one-half times their regular rate for each hour employed in excess of 40 hours per week. In addition, section 551.501 of Part 5 of the Code of Federal Regulations, 5 C.F.R. § 551.501, provides that federal agency employers such as the Bureau of Prisons, shall compensate their employees at a rate of not less than one and one-half times the employees' regular rate of pay for all hours of work in excess of 8 in a day and/or 40 in a workweek. At all or some of the times material herein, plaintiffs and other employees similarly situated have been entitled to FLSA overtime pay for all hours of work in excess of eight (8) in a day and/or forty (40) in a workweek.

37.     For federal employees such as plaintiffs, time spent in a paid, nonwork status, such as holiday, paid leave, compensatory time off, and excused absences, is considered "hours of work" for purposes of calculating overtime entitlement.  5 C.F.R. § 551.401(c).

38.     At all or some of the times material herein, and since December 29, 2020, the plaintiffs have worked for defendant at FCI Ashland and have been assigned to work the 24-hour custody posts set forth above in Paragraph 16. At all times material herein, each of the plaintiffs has worked hours in excess of forty (40) hours per week and/or eight (8) hours a day when assigned to these posts. In addition, at all times material herein, each of the plaintiffs has performed uncompensated pre-shift and/or post-shift work.

39.     At all times material herein, plaintiffs have been entitled to be compensated with overtime pay for time spent performing work prior to their paid shift start times. The defendant,

however, has failed to count as work the pre-shift tasks that plaintiffs regularly perform outside of their paid shift times, including the time that plaintiffs spend clearing the required staff screening site, collecting and donning required equipment, security work performed while walking to their assigned post, and completing an on-post shift exchange with an outgoing correctional officer.

40. At all times material herein, plaintiffs have been entitled to be compensated with overtime pay for time spent performing work after the end of their scheduled paid shift. The defendant, however, has failed to count as work the post-shift tasks that plaintiffs have performed outside of their paid shift times including the time that plaintiffs spend completing an on-post shift exchange with the oncoming correctional officer and security work performed while crossing the Institution's compound towards the Institution's exit..

41. Because the defendant has failed to count as compensable work time these required pre-shift and post-shift tasks, the plaintiffs have not been compensated for all hours of work as required by the FLSA.

42. By failing and refusing to pay plaintiffs and other employees similarly situated the overtime pay required under law, defendant has violated, and is continuing to violate in a willful and intentional manner, the provisions of the FLSA. As a consequence, at all times material herein, plaintiffs have been unlawfully deprived of overtime compensation and other relief for the maximum statutory period allowed under federal law.

43. As a result of defendant's willful and purposeful violations of the FLSA and Title 5, there have become due and owing to each of the plaintiffs various amounts that have not yet been precisely determined. The employment and work records for each plaintiff are in the exclusive possession, custody and control of defendant and its public agencies, and the plaintiffs

are unable to state at this time the exact amounts owing to each of them. Defendant and its public agencies are under a duty imposed by the Government Accounting Office retention schedule, 29 U.S.C. § 211(c), and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to plaintiffs and other employees similarly situated from which the amounts of defendant's liability can be ascertained.

44. Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover backpay and liquidated damages in an amount equal to their backpay for the defendant's failure to pay overtime compensation in compliance with the FLSA.

45. Pursuant to the Back Pay Act, 5 U.S.C. § 5596, plaintiffs are entitled to recover interest on their backpay damages for the defendant's failure to pay them overtime compensation.

46. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b), the Back Pay Act, 5 U.S.C. § 5596, as well as other applicable laws and regulations.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs, on their own behalf and on behalf of all others similarly situated, pray that this Court:

(a) Find that defendant has willfully and wrongfully violated its statutory obligations, and deprived each plaintiff of their rights under the FLSA and Title 5;

(b) Award each plaintiff monetary damages, including backpay and liquidated damages equal to their unpaid compensation, plus interest;

(c) Award plaintiffs their reasonable attorneys' fees to be paid by defendant, and the costs and disbursements of this action; and

(d) Grant such other relief as may be just and proper.

Dated: December 29, 2023

Respectfully submitted,

*/s/ Diana J. Nobile*
Diana J. Nobile
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, D.C.  20005
Phone: (202) 833-8855
djn@mselaborlaw.com

*Counsel of Record for Plaintiffs*

Sophia Serrao
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Avenue, N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
ss@mselaborlaw.com

*Of Counsel for Plaintiffs*